# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ERICH PURRY and AIESHA PURRY,

   Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

   Defendant.

Case No. 18-10721
Hon. Terrence G. Berg

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. Introduction

Erich Purry bought a home from someone who did not own it. He got insurance, but when a fire damaged the home shortly after he rented it out, the insurance company would not pay and rescinded the policy because, it says, he misrepresented himself as the owner. Now Purry and his wife (Plaintiffs) are suing State Farm Fire and Casualty Company (Defendant) for breach of contract and violation of the Michigan Uniform Trade Practices Act. Dkt. 1-2 at PageID.16–17. The insurance company has moved for Summary Judgment, claiming that there is no genuine issue of material fact to be decided by a jury, and Defendant is entitled to judgment as a

1

matter of law. Dkt. 11.The Court agrees with Defendant, so the Motion for Summary Judgment is **GRANTED**.

II. **Background**

This case raises a number of legal questions: (1) whether the misrepresentation on the insurance application was material; (2) whether an innocent misrepresentation is grounds for rescission of an insurance contract; and (3) whether language in the insurance contract waives an insurer's right to rescind the contract for innocent misrepresentation. The facts are essentially undisputed.

Plaintiffs believed that they purchased the property located at 11175 Rossiter Street in the City of Detroit on February 23, 2017 for $4,500 from a person purporting to be Iesha Kurtz. Dkt. 14, PageID.136. The on-line record available for the Wayne County Register of Deeds shows the following Quit Claim Deed recorded on February 23, 2017.

```
QUIT CLAIM DEED - 2017057628
General Data
  Document Number                                      Return Address(es)
  2017057628
  Liber    Page                                         • Return
  53538    662                                          • Alternate Address

                                                        Return To
  Recording Date            Entry Date                  ERICH PERRY
  02/23/2017 03:51:44 PM    02/23/2017 03:52:13 PM
  Number Pages                                          Address1
  1
  Dated Date                Consideration (Loan Amount) Address2
  02/23/2017                $1.00
  Recording Fee             Tax Stamp Number            City   State   Zip
  $15.00
  Affidavit Filed?          Consideration    Total Fees Mailback Date
                            $0.00            $15.00    02/23/2017 12:00:00 AM
  ☐

Names
  Grantor                   Grantee
  KURTZ IESHA SINGLE        PERRY ERICH D MARRIED

Notary Name
  TAMIKA JANELLE REED

Cross Reference
  Document Number           Liber    Page    Internal    Document Type
                                             ☐

Legal
  Liber: 50 Page: 60 Subd: KING HEIGHTS Lot: 77 Remarks: S 30' Municip: DETROIT TaxID: 21/068744 Street: 11175 ROSSITER
  Liber: 50 Page: 60 Subd: KING HEIGHTS Lot: 76 Remarks: N 10' & E 9' V AL ADJ RR Municip: DETROIT TaxID: 21/068744 Street: 11175 ROSSITER
```

Fig. 1, Conveyance from Iesha Kurtz to Erich Perry (which the Court understands to be a misspelled version of the name of one plaintiff in this case), Wayne County Register of Deeds.

Plaintiff claims to have conducted a title search, Dkt. 14-3, PageID.162, but an official title search for the parcel by street address would have revealed that Iesha Kurtz had previously conveyed the same property to Bee Properties Management on September 16, 2016. Dkt. 11, PageID. 62. The prior conveyance was also

recorded under the wrong name; that deed shows a transfer from "Lesha" Kurtz of the 11175 Rossiter Street property.[1]

Fig. 2, Conveyance from Lesha Kurtz to Bee Property Management, Wayne County Register of Deeds.

---

[1] The Court obtained this information from the Wayne County Register of Deeds online title search (https://www.waynecountylandrecords.com/recorder/web/). The Court may take judicial notice of public records and government documents, including those available from reliable sources on the internet. *See* Fed. R. Evid. 201(b)(2).

Parties agree that, unfortunately, Plaintiffs purchased the property from a person who was posing as the real owner. *Id.* The impostor purported to convey the property to Plaintiffs via a quitclaim deed.[2]

Plaintiffs paid various entities for work on the property including painting and installing a new furnace and hot water tank. Dkt. 14-7, PageID.190. Plaintiffs signed a lease with a third-party tenant to live in the property. Dkt. 14-8, PageID.191–94. On March 1, 2017, Plaintiffs applied for a Rental Dwelling insurance policy from Defendant. Dkt. 14-2, PageID.154–56. In response to the question on the application asking for "ownership type," Plaintiff listed "individual." *Id.* at PageID.154. The insurance application contained no other question directed toward determining whether the applicant was the legal owner of the property he or she was attempting to insure. Defendant issued the Rental Dwelling Policy.

On May 21, 2017, there was a fire at the property and Plaintiffs sustained losses that would have been covered by the insurance policy purchased from Defendant. Dkt. 14, PageID.136. Defendant

---

[2] Quitclaim deeds convey only the interest the seller has to convey, and no more. By using a quitclaim deed, a seller makes no warranties with respect to ownership of the property. *Rights or interests covered by quitclaim deed*, 162 A.L.R. 556 (1946) (updated weekly) ("[I]t is well settled that nothing is conveyed by a quitclaim deed if the grantor himself had no title or interest to the property conveyed.").

conducted an investigation in response to the claim. During the investigation, Defendant interviewed the real Iesha Kurtz (spelled "Aiesha" in some instances in the record), who told Defendant that she had never conveyed the property to Plaintiffs. Dkt. 11-3, PageID.88. Once Defendant concluded that Plaintiffs did not own the property, it rescinded the insurance policy. Dkt. 11-7, PageID.101. State Farm only issues Rental Dwelling Policies to persons who own the property being insured. Dkt. 11-6.

### III. Standard of Review

Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

As the moving party, the Defendant has the initial burden to show that there is an absence of evidence to support Plaintiff's case. *Selby v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552. Finally, "[i]n this action arising under federal diversity jurisdiction, we apply the substantive law of Michigan, as the forum state." *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012).

## IV. Analysis

As a general matter, a material misrepresentation on an insurance application entitles the insurer to rescind the insurance policy. *Lake States Ins. Co. v. Wilson*, 586 N.W.2d 113, 115 (Mich. Ct. App. 1998). As stated above, central issues in this case are (1) whether the misrepresentation on the insurance application was material; (2) whether an innocent misrepresentation is grounds for rescission of an insurance contract; and (3) whether language in the insurance

contract providing for rescission in cases of intentional misrepresentation waives an insurer's right to rescind the contract for innocent misrepresentation.

### a. Whether Plaintiff submitted a material misrepresentation as part of the insurance application

It is undisputed that the Plaintiffs answered the application's question about "type of owner" by saying "individual." Plaintiffs argue that their answer to the "ownership type" question was not truly a misrepresentation and that, if it was a misrepresentation, it was an immaterial one.

First, Plaintiff points out that the application for rental dwelling insurance did not directly ask whether or not the applicant owns the property he is seeking to insure. Dkt. 14, PageID.137. Instead, it asks only for the applicant to state the *type* of ownership. *Id*. Plaintiffs argue that by answering "individual" to this question, they did not make a misrepresentation—they were accurately stating the type of ownership. *Id*.

There are two responses to this argument. First, asserting technical correctness misses the point: it is false and misleading to represent *any* type of ownership if one is not an owner. Implicit in the answer to the type of ownership question was an assumption that

8

the applicant is the owner. By answering the question at all, Plaintiffs certainly implied, if they did not state outright, that *they* were the individual owners of the property. Indeed, Plaintiffs believed they did own the property; they *intended* to convey that. The Rental Dwelling Policy issued to Plaintiffs clearly contemplates that the insured person is the owner of the property. Dkt. 18, PageID.225 ("Section I – Your Property").

Second, even if the answer "individual" can be construed *not* to imply that Plaintiffs owned the property, that answer was still incorrect. When Plaintiffs applied for the rental dwelling policy, the true owner of the property was not an individual at all—it was Bee Property Management. Even giving Plaintiffs the benefit of forgoing the implication that they owned the property, their answer to the type of ownership question was still a misrepresentation because it was inaccurate.

"[A] fact or representation in an application is 'material' where communication of it would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.'" *Oade v. Jackson National Life Ins. Co. of Mich.*, 632 N.W.2d 126, 131 (Mich. 2001). "For example, if an insurer would not have issued the questioned policy if it had been aware of the questioned misrepresentation, the misrepresentation is material." *Cont'l Gen. Ins. Co.*

9

*v. Abe Gershonowicz*, No. 277199, 2008 Mich. App. LEXIS 762, at *8 n.3 (Mich. Ct. App. Apr. 15, 2008). Defendant attached an affidavit to its motion from Michelle Carney, Underwriting Team Manager for State Farm. Dkt. 11-6. In that affidavit, Ms. Carney states that "the applicant and policyholder must be the owner of the home. If the applicant is not the owner of the home, the property is ineligible for coverage." *Id.* at PageID.99. Defendants would have rejected the risk of insuring Plaintiffs had Plaintiffs communicated that they were not the true owners of the property; consequently, the misrepresentation was a material one.

During oral argument on its motion, Defendant represented that one reason it does not issue rental dwelling insurance policies to non-owners is that non-owners do not have an incentive to maintain the property in good condition. This increases the risk to the insurer. Plaintiffs argued in their response and at oral argument that their misrepresentation did not increase the risk to Defendant in insuring the property because Plaintiffs cared for the property as if they were the true owners. Dkt. 14, PageID.147. Consequently, they say, Plaintiffs had some kind of an insurable interest, even if they did not have legal ownership, making the misrepresentation immaterial. But the analysis for the Court as a matter of law is general, rather than specific. Although *these* Plaintiffs may not have increased the risk to Defendant through their non-ownership

(because they were behaving as responsible owners would), Defendant's knowledge of that non-ownership would have caused them to reject any risk at all, denying Plaintiffs' application for coverage. In other words, insurable interest alone would not have been enough for Defendant to issue this policy in the first place. Because of that, the misrepresentation that Plaintiffs owned the property, notwithstanding the fact that they may have had an insurable interest, is material.

As set forth above, Plaintiffs' answer to the type of ownership question was a misrepresentation. Furthermore, that misrepresentation was material because if Defendant had knowledge of it, Defendant would have rejected the risk brought on by insuring Plaintiffs.

### b. Whether an innocent misrepresentation is grounds for rescission of an insurance contract

Plaintiffs contend that innocent misrepresentation is subject to a "good faith" exception such that insurers may not rescind a policy unless the misrepresentation was intentional. Ordinarily, "[t]o establish actionable fraud," Michigan law requires a party to show (1) the other party made a material misrepresentation; (2) it was false; (3) the party knew it was false or made it "recklessly, without any knowledge of its truth, and as a positive assertion"; (4) the party

11

intended to induce action; (5) the party did induce action in reliance on the statement; and (6) the action caused injury. *Titan Ins. Co. v. Hyten*, 817 N.W.2d 561, 576–77 (Mich. 2012). In this case, Plaintiffs argue that they did not commit fraud because they did not knowingly or intentionally misrepresent the facts—they thought they owned the property. Dkt. 14, PageID.143.

The Michigan Supreme Court has consistently upheld the right of a contracting party to relief for misrepresentations, even where the misrepresentation is innocent. *United States Fidelity and Guaranty Company v. Black*, 313 N.W.2d 77, 83 (Mich. 1981) ("[I]f there was in fact a misrepresentation, though made innocently, and its deceptive influence was effective, the consequences to the [contracting party] being as serious as though it had proceeded from a vicious purpose, he would have a right of action for the damages caused thereby either at law or in equity." (internal quotation marks and citations omitted)); *Lash v. Allstate Insurance Company*, 532 N.W.2d 869, 872 (Mich. Ct. App. 1995) ("[R]escission is justified in cases of innocent misrepresentation if a party relies upon the misstatement, because otherwise the party responsible for the misstatement would be unjustly enriched if he were not held accountable for his misrepresentation.").

In response to the cases above, Plaintiff cites the unpublished decision of *Langley v. Auto-Owners Life Insurance Company*, 2012

WL 2476668, Docket No. 300517 (Mich. Ct. App. June 28, 2012). This case stands for the proposition that innocent misrepresentations made in good faith are *not* grounds for rescission of a life insurance policy. *Langley* appears to conflict with both *Fidelity* and *Lash*. The Court finds the *Fidelity* and *Lash* approach persuasive for two reasons.

First, *Langley* is an unpublished case from the Michigan Court of Appeals. In contrast, *Fidelity* is binding precedent of the Michigan Supreme Court. Second, *Langley* and the cases upon which it relies are distinguishable from this case. The *Langley* court's holding was premised on its interpretation of the history and meaning of M.C.L. 500.4016 and 500.2218, Michigan statutes governing false statements in applications for life and disability insurance— not rental dwelling insurance—policies. In addition, *Franklin Life Insurance Company v. William J. Champion and Company*, 350 F.3d 115 (6th Cir. 1965), is central to the reasoning in *Langley*. In *Franklin*, an application for life insurance asked whether the applicant was "now in good health." 350 F.3d at 118. In response, the insured stated, "Yes." *Id*. In fact, the insured unknowingly suffered from a serious disease which he had no reason to suspect. *Id*. at 117. The court in *Franklin* held that rescission was impermissible for a misrepresentation of this kind. But this factual scenario is distinct from the instant case. For one, the question of whether a person is

13

in good health is a broad, general, and holistic one. The question Plaintiffs in this case answered was specific and factual.

> The courts, both State and Federal, have generally construed statements that an applicant was in good health or free from disease as a representation only that the applicant in good faith believed and was justified in believing that his health was not impaired by any condition which would ordinarily be regarded as a disease. The representation cannot reasonably be understood as intended to do more than convey to the company such information as the applicant might be expected to have . . .

*Id.* at 121.

In contrast, no case law supports the view that a representation in an insurance application about the applicant's type of property ownership is only a statement of one's good faith belief as to ownership. Nor is there any reason to think that such a representation is normally based on information available only to the applicant. Rather, a question about type of ownership is intended to elicit a *fact*— the fact of ownership. *Langley* adopts and extends the *Franklin Life* rule but is also itself a case about life insurance. Nothing in its reasoning appears to indicate that it applies equally to rental dwelling insurance.

Finally, even if the Court applied the reasoning of *Langley*, Plaintiff cannot succeed. The *Langley* court states, "[I]n order to void a policy for a misrepresentation an insurer must prove that the

14

applicant made a representation that was actually false, that the applicant knew *or should have known* that the representation was false, and that the representation was material to either the risk or hazard assumed." *Langley*, 2012 WL 2476668, at *6 (emphasis added). While Plaintiffs may not have *known* that they did not own the property, they certainly should have. That information was recorded and available to Defendant upon a proper search of the title records by the street address of the property. Although the prior conveyance was recorded under the wrong name, Plaintiffs, not Defendant, bear that risk. In addition to the fact that Plaintiffs could have avoided this situation by purchasing title insurance, individuals can conduct official legal title searches a search in the land records for the street address of the property if they pay a small fee. Wayne County Register of Deeds, *Public Login*, https://www.waynecountylandrecords.com/recorder/web/login.jsp?submit=Continue (October 25, 2018) ("You can open an On-Demand Account which allows you to conduct full legal searches."). Plaintiffs would have discovered the prior conveyance had they exercised this search option.

In real property conveyance disputes, a properly recorded deed is deemed to give constructive notice to subsequent purchasers. 21 Mich. Civ. Jur. Recording of Instruments and Notice of Rights § 30, *Duty to examine record and take notice; persons bound or protected*

15

(2018) ("Since the recording of the various designated instruments or writings is constructive notice to those subsequently dealing with or attempting to acquire interests in the property involved, it is incumbent upon such persons to examine carefully the public records in order to determine the nature of the legal title to the property and the rights or interests of other persons in the premises."). Although the prior deed bore a misspelled name of the grantor and so was not correctly recorded, a thorough search would have revealed it. Plaintiffs therefore had constructive notice that they were not the true owners of the property. Even under the *Langley* rule Plaintiffs urge the Court to accept, they cannot prevail.

### c. Whether language in the insurance contract waives the insurer's right to rescind the contract for intentional misrepresentation

The final matter of law for the Court to examine requires only brief discussion. Plaintiffs' policy includes the language:

> This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

Dkt. 18, PageID.218.

Plaintiffs argue that by including this language as to intentional misrepresentation Defendant has waived its right to remedies for innocent misrepresentation.

Under Michigan law, language in an insurance contract that allows for rescission based on intentional misrepresentation does not waive an insurer's equitable right to rescind the contract for innocent misrepresentation. *AMI Stamping LLC v. Act American Ins. Co.*, 709 F. App'x 354, 362 (6th Cir. 2017) (finding that under Michigan law the equitable right to void a contract for innocent misrepresentation in the application is separate from the contractual right to void the contract for intentional misrepresentations); see also *Seneca Specialty Insurance Company v. West Chicago Property Company*, 2010 WL 431734, No. 08-12335 (E.D. Mich. Feb. 2, 2010) (Battani, J.) (same). Therefore, any language in the insurance policy providing for rescission for intentional misrepresentation would not waive Defendant's other rights to rescind.

Plaintiffs' policy also provides for cancellation of the policy in cases of material misrepresentation, innocent or not:

> When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy or if the risk has changed substantially since

the policy was issued. We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

Dkt. 18, PageID.218.

This provision applies to Plaintiffs because their material misrepresentation that they owned the property would have caused Defendant not to issue the policy. But instead of exercising the cancellation option, Defendant rescinded the policy.

The Court finds that Defendant is entitled to rescind the policy for material misrepresentations notwithstanding the provision in the policy providing for cancellation with 30 days' notice in such instances. Specific reservation of the right to cancel a policy does not waive an insurer's right to rescind the policy if rescission is otherwise appropriate. *Cf. Burton v. Wolverine Mutual Ins. Co.*, 540 N.W.2d 480, 482 (Mich. Ct. App. 1995) ("We would not interfere with defendant's right to rescind the policy ab initio had it chosen to do so upon discovery of the material misrepresentation . . . However, in the case at bar, defendant did discover the misrepresentation before the loss and chose to issue a cancellation rather than a rescission.").

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** and the case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

Dated: October 30, 2018
s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on October 30, 2018.

s/A. Chubb
Case Manager